Michael B. Garfinkel, State Bar No. 156010
MGarfinkel@perkinscoie.com
Oliver M. Gold, State Bar No. 279033
OGold@perkinscoie.com
**PERKINS COIE LLP**
1888 Century Park E., Suite 1700
Los Angeles, CA 90067-1721
Telephone: 310.788.9900
Facsimile: 310.788.3399

Attorneys for Plaintiff WILLIAM MORRIS
ENDEAVOR ENTERTAINMENT, LLC

# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIAM MORRIS ENDEAVOR ENTERTAINMENT, LLC, a Delaware limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>SCRIPPS NETWORKS INTERACTIVE, INC., an Ohio corporation; TRAVEL CHANNEL, L.L.C., a Delaware limited liability company; and DOES 2–50, inclusive,<br><br>Defendants. | Case No.: CV13-4229 JAK (AJWx)<br><br>[Assigned to the Hon. John A. Kronstadt]<br><br>**SECOND AMENDED COMPLAINT**<br><br>**[DEMAND FOR JURY TRIAL]** |

Plaintiff William Morris Endeavor Entertainment, LLC ("Plaintiff") alleges as follows:

## INTRODUCTION

1. In this commission dispute between Plaintiff, on the one hand, and defendant Scripps Networks Interactive, Inc. ("Scripps") and defendant Travel Channel, LLC ("Travel Channel", collectively "Defendants"), on the other hand, Plaintiff seeks damages, an accounting, and declaratory relief in connection with package commissions owed to it in connection with the television series entitled *Ghost Adventures* ("Ghost Adventures"), which is currently in its seventh season on Travel Channel. Defendants have failed to pay the package commissions due and owing, and have failed to provide a full accounting for Ghost Adventures, to Plaintiff, for which it is entitled and despite several requests for the same.

## PARTIES

2. Plaintiff William Morris Endeavor Entertainment, LLC is a Delaware limited liability company with its principal place of business in the County of Los Angeles, State of California. William Morris Endeavor Entertainment, LLC is the successor-in-interest to William Morris Agency, LLC which, at all times relevant hereto, was also a Delaware limited liability company, with its principal place of business in the County of Los Angeles, State of California. William Morris Agency, LLC and William Morris Endeavor Entertainment, LLC shall be collectively referred to herein as "Plaintiff".

3. Plaintiff is informed and believes, and on that basis alleges, that defendant Scripps Networks Interactive, Inc. is an Ohio corporation with its principal place of business in the City of Knoxville, County of Knox, State of Tennessee.

4. Plaintiff is informed and believes, and on that basis alleges, that defendant Travel Channel, L.L.C. is a Delaware limited liability company with its principal place of business in Chevy Chase, Maryland. Travel Channel was

1  formerly DOE 1.

2      5.    Plaintiff is ignorant of the true names or capacities of the defendants sued herein under the fictitious names DOES 2 through 50, inclusive, and will amend this complaint to allege the same as soon as ascertained. Plaintiff is informed and believes and on that basis alleges, that each of the fictitiously-named defendants is responsible in some manner for the occurrences referred to herein, and caused injury and damages directly and proximately thereby to Plaintiff as herein alleged, either through their conduct or through the conduct of their agents and/or servants and/or employees.

    6.    Plaintiff is informed and believes and on that basis alleges, that each of the defendants was, at all times mentioned in this complaint, acting as the agent, employee, or alter-ego of every other defendant, and in doing the things mentioned herein, was acting within the course and scope of such agency, employment, or other relationship, and with full knowledge and consent of each of the other defendants.

## *JURISDICTION AND VENUE*

    7.    On May 13, 2013, Plaintiff filed an action against Scripps in the Superior Court for the State of California, County of Los Angeles, assigned Case No. SC120710. As further explained below, based upon the conduct of Scripps and its acquisition of Travel Channel in 2009, Plaintiff understood that Scripps was responsible for the package commissions at issue.

    8.    On June 12, 2013, Scripps filed a Notice of Removal of Action in this Court pursuant to 28 U.S.C. sections 1441(b) and 1332. Based upon Scripps' Notice of Interested Parties filed in this action in connection with the removal, as well as the statements of its counsel, Plaintiff adds Travel Channel as a defendant to this action. Plaintiff is informed and believes, and on that basis alleges, that Travel Channel is a proper party to this action because it produced and owns the rights to Ghost Adventures.

9. California courts and courts sitting in California have jurisdiction over Defendants because, upon information and belief, Defendants have sufficient minimum contacts in California and have intentionally availed themselves of the California market so as to render the exercise of jurisdiction over them by the California courts consistent with traditional notions of fair play and substantial justice.

10. Venue is proper in Los Angeles County, State of California because, upon information and belief, the negotiations between Plaintiff and Travel Channel pertaining to Plaintiff's package commissions for Ghost Adventures, the parties' correspondence, which memorialize that agreement, and the obligations of that agreement by Defendants each took place in or were to be performed in the County of Los Angeles. Venue is further proper because Defendants maintain an office and transact business in the County of Los Angeles, State of California.

## GENERAL ALLEGATIONS

11. Plaintiff was the agent for MY Tupelo Entertainment ("MYE"), the producers of Ghost Adventures, in connection with its production agreement with Travel Channel (the "Production Agreement"). Beginning in February 2008, individuals from Plaintiff had specific conversations with Travel Channel's then Senior Vice President of Commercial Affairs & Operations, Jonathan Sichel, regarding Plaintiff's package commission.

12. At the conclusion of those conversations, Mr. Sichel, on behalf of Travel Channel, expressly agreed to Plaintiff's standard package commission. On or about March 26, 2008, Travel Channel placed an eight-episode order for Ghost Adventures.

13. Following this, on or about April 29, 2008, Plaintiff's Senior Vice President and Worldwide Head of Television Business Affairs spoke with Mr. Sichel to confirm the terms of Plaintiff's package commission, which, as set forth in the letter dated April 29, 2008 (the "Confirmation Letter"), provided that Travel

Channel would pay to Plaintiff as its package commission "3% of 100% of the final production budget or cost of production, whichever is greater ["Upfront Package Commissions"], 3% of such production budget or cost of production *payable out of* 50% of 100% of net proceeds ["Deferred Package Commissions"], and 10% of the back-end proceeds based on our clients' [MYE's] most favorable definition ["Back-end Package Commissions"]." A true and correct copy of the Confirmation Letter is attached hereto as *Exhibit A*.

14. On or about May 5, 2008, Mr. Sichel responded to the Confirmation Letter and confirmed the package agreement with Plaintiff in writing, and noted that Travel Channel was agreeable to the idea of packaging fees based on the agreement with Plaintiff.

15. On or about May 15, 2008, Rex Recka, Vice President of Business Affairs & Partnerships for Travel Channel sent an email to Plaintiff in which he confirmed that all deal points for the commissioning of Ghost Adventures had been reached and agreed to pay Plaintiff its package commission on Ghost Adventures. However, Mr. Recka also questioned some of the terms of the package commission, as set forth in the Confirmation Letter.

16. In response to Mr. Recka's concerns, on or about June 5, 2008, Plaintiff sent Travel Channel a letter (the "Reconfirmation Letter"), which reiterated that the prior Confirmation Letter set forth Plaintiff's "standard package commission structure for all projects of this nature, irrespective of the studio or network." The Reconfirmation Letter further recounted Plaintiff's meeting with Mr. Sichel earlier in the year, during which time the standard package commission structure for Ghost Adventures was discussed, and that Mr. Sichel agreed to those terms. A true and correct copy of the Reconfirmation Letter is attached hereto as *Exhibit B*.

17. No individual or representative of Travel Channel responded to the Reconfirmation Letter.

18. Travel Channel affirmed its acceptance of the terms of Plaintiff's package commission for Ghost Adventures, as set forth in the Confirmation Letter and Reconfirmation Letter, by partially performing under that agreement. On or about August 12, 2008, Travel Channel paid the Upfront Package Commissions on the first season of Ghost Adventures by including it as a line-item expense in the show's budget, which was then remitted by MYE to Plaintiff, in the amount of $45,656.00 (the "First Package Commission Payment").

19. Based upon Travel Channel's acknowledgment and payment of the First Commission Payment, Plaintiff did not seek its traditional commission of ten percent (10%) from its client MYE based on the compensation MYE received under the Production Agreement.

20. On or about May 6, 2009, consistent with its prior practice, Plaintiff sent an invoice for $155,801.10 reflecting the Upfront Package Commissions due on the second season of Ghost Adventures. Plaintiff sent the invoice to MYE, understanding that Travel Channel would again include its Upfront Package Commissions in the budget which would then be remitted by MYE to Plaintiff, as had been done with the First Commission Payment.

21. On or about May 12, 2009, MYE responded to Plaintiff's invoice by sending an email to Plaintiff stating that, despite it having previously paid Plaintiff its package commission fee for the first season of Ghost Adventures, MYE had subsequently been informed by Travel Channel that no arrangement with Plaintiff, which would entitle it to its package commission structure, had been reached. MYE confirmed Plaintiff's representation of MYE and entitlement to commissions with respect to Ghost Adventures.

22. On or about September 30, 2009, David Leffin of Plaintiff sent an email response to MYE's email of May 12, 2009, stating that Plaintiff "absolutely DID have a written package agreement with The Travel Channel" on Ghost Adventures. On or about October 2, 2009, MYE responded and suggested that Mr.

Leffin contact Mr. Recka at Travel Channel, who was copied on the email. Mr. Leffin then communicated Plaintiff's entitlement to package commissions on Ghost Adventures to Mr. Recka, leading to a conversation and a further exchange of emails. On or about October 26, 2009, Mr. Recka responded and advised Mr. Leffin that he would speak to MYE and the head of Production Management to see if "I can work this out this week to ensure everyone is in sync."

23. On or about November 5, 2009, it was announced that Scripps had purchased the controlling interest in Travel Channel. Plaintiff is informed and believes, and on that basis alleges, that the transaction closed in January 2010. In May 2010, Plaintiff was advised that it should direct its communications regarding its package commissions on Ghost Adventures to Pat Guy at Scripps.

24. Thereafter, Plaintiff discussed its package commission on Ghost Adventures with Pat Guy at Scripps. On or about December 13, 2010, Mr. Leffin and Mr. Guy had a telephone conversation in which Mr. Leffin explained Plaintiff's entitlement to package commissions on Ghost Adventures. Mr. Guy acknowledged that Scripps was the proper party to discuss the package commission issue and asked for additional documentation, which Mr. Leffin provided the same day. Mr. Guy indicated that he would investigate and get back to Mr. Leffin to discuss the matter further.

25. Over the next two years, Plaintiff repeatedly raised the issue of its package commissions on Ghost Adventures with Pat Guy at Scripps. Mr. Guy was slow to respond and continued to express an interest in investigating the matter, but never got back to Plaintiff as promised.

26. On February 27, 2013, counsel for Plaintiff sent a letter to Mr. Guy at Scripps setting forth Plaintiff's entitlement to package commissions on Ghost Adventures and demanding, among other things, Scripps' written acknowledgment of its package commission obligation by March 15, 2013. Scripps did not respond to the letter by the imposed deadline.

27. On May 13, 2013, Plaintiff filed its state court action against Scripps based upon the belief that Scripps was responsible for the package commissions at issue as a result of its acquisition of Travel Channel and Travel Channel's referral of the matter to Mr. Guy at Scripps. Mr. Guy's statements and conduct led Plaintiff to believe that Scripps stood in the shoes of Travel Channel and was therefore responsible for the package commissions. At no time during Plaintiff's discussions with Mr. Guy did Mr. Guy take the position that Scripps was not the proper party. It was therefore Plaintiff's understanding that Scripps acquired the rights to Ghost Adventures and under California law, its voluntary acceptance of the benefits of that transaction is equivalent to a consent to all obligations arising from it, so far as the facts are known, or ought to be known, to it, which obligations include the package commissions owed to Plaintiff.

28. Following its receipt of the First Commission Payment, Plaintiff has not received any additional upfront commissions for the subsequent seasons of Ghost Adventures or associated specials from Defendants. Additionally, Plaintiff has not received any statement from Defendants calculating the upfront, deferred, or backend package commission due and owing to Plaintiff pursuant to the parties' agreement.

29. Plaintiff is informed and believes, and thereupon alleges, that after the first season of Ghost Adventures, Defendants, without explanation, ceased including Plaintiff's upfront commission payments in the show's budget and, therefore, MYE has not remitted such payments to Plaintiff.

30. Plaintiff's claims are primarily based upon its contract with Defendant that is founded upon instruments in writing, including among other things, the Confirmation Letter, the Reconfirmation Letter, and the First Commission Payment (collectively referred to as the "Package Agreement").

31. Plaintiff's action is timely because, among other reasons, (a) the four-year statute of limitations found in California Code of Civil Procedure section 337

-8- SECOND AMENDED COMPLAINT

applies; (b) the accrual of the statute of limitations was delayed until Plaintiff knew or should have known of the breach of the Package Agreement; (c) even if the statute of limitations began to run upon receipt of the May 12, 2009 email referenced above, in light of the intervening weekend, the state court complaint was timely filed on Monday, May 13, 2013 pursuant to California Code of Civil Procedure section 12; and (d) in any event, under the theory of continuous accrual, the statute of limitations runs from each payment due under the Package Agreement, which payments continue to become due as new seasons and episodes of Ghost Adventures are produced and broadcast.

### FIRST CAUSE OF ACTION

#### (Breach of Contract)

32. Plaintiff repeats and realleges each of the allegations set forth in paragraphs 1 through 31, above, and the same are incorporated herein by this reference.

33. Plaintiff has fully performed each of the promises, covenants and conditions to be performed by it under the Package Agreement, except to the extent such performance was prevented or excused by Defendants and/or MYE.

34. Defendants breached the Package Agreement by failing and refusing to pay Plaintiff commissions in accordance therewith, and by denying the existence of any agreement by which Plaintiff was entitled to its standard package commission fee.

35. By reason of the foregoing, Plaintiff has been damaged and will be damaged in a sum Plaintiff is informed and believes is in excess of $500,000, together with interest thereon at the legal rate from the date each payment became or becomes due.

applies; (b) the accrual of the statute of limitations was delayed until Plaintiff knew or should have known of the breach of the Package Agreement; (c) even if the statute of limitations began to run upon receipt of the May 12, 2009 email referenced above, in light of the intervening weekend, the state court complaint was timely filed on Monday, May 13, 2013 pursuant to California Code of Civil Procedure section 12; and (d) in any event, under the theory of continuous accrual, the statute of limitations runs from each payment due under the Package Agreement, which payments continue to become due as new seasons and episodes of Ghost Adventures are produced and broadcast.

### FIRST CAUSE OF ACTION

#### (Breach of Contract)

32. Plaintiff repeats and realleges each of the allegations set forth in paragraphs 1 through 31, above, and the same are incorporated herein by this reference.

33. Plaintiff has fully performed each of the promises, covenants and conditions to be performed by it under the Package Agreement, except to the extent such performance was prevented or excused by Defendants and/or MYE.

34. Defendants breached the Package Agreement by failing and refusing to pay Plaintiff commissions in accordance therewith, and by denying the existence of any agreement by which Plaintiff was entitled to its standard package commission fee.

35. By reason of the foregoing, Plaintiff has been damaged and will be damaged in a sum Plaintiff is informed and believes is in excess of $500,000, together with interest thereon at the legal rate from the date each payment became or becomes due.

## SECOND CAUSE OF ACTION

### *(Accounting)*

36. Plaintiff repeats and realleges each of the allegations set forth in paragraphs 1 through 31, above, and the same are incorporated herein by this reference.

37. Plaintiff is entitled to an accounting of the final production budget, the cost of production and the back-end proceeds for all seasons and episodes of Ghost Adventures, but Defendants have failed to provide any such accounting.

38. Demand is hereby made for such an accounting.

39. An accounting is required to determine the total amount of the package commission payments due and owing from Defendants to Plaintiff with respect to Ghost Adventures.

## THIRD CAUSE OF ACTION

### *(Declaratory Relief)*

40. Plaintiff repeats and realleges each of the allegations set forth in paragraphs 1 through 31, above, and the same are incorporated herein by this reference.

41. An actual controversy has arisen and now exists between Plaintiff, on the one hand, and Defendants, on the other hand, regarding package commissions due in connection with the television series, Ghost Adventures, now in its seventh season on Travel Channel. Plaintiff contends and Defendants deny that Defendants are obligated to pay Plaintiff its standard package commission fee for seasons two through the life of the program, based on the following calculation: (1) 3% of 100% of the final production budget or cost of production, whichever is greater; (2) 3% of such production budget or cost of production payable out of 50% of 100% of net proceeds; and (3) 10% of the back-end proceeds based on MYE's most favorable definition, as was agreed-upon by and between Plaintiff and Travel Channel, and pursuant to which, Travel Channel partially performed.

42. Plaintiff desires a determination of its rights and a declaration that it is entitled to such commissions.

43. A declaration is necessary and appropriate at this time under all of the circumstances so that Plaintiff and Defendants may determine their current and prospective rights and liabilities with regard to the commissions.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for and requests relief as follows:

1. That Plaintiff be awarded the balance of the commissions due in an amount equal to: (1) 3% of 100% of the final production budget or cost of production, whichever is greater; (2) 3% of such production budget or cost of production payable out of 50% of 100% of net proceeds; and (3) 10% of the back-end proceeds based on MYE's most favorable definition, for each season of Ghost Adventures, commencing with season two and extending throughout the life of the program;

2. An Order declaring that Plaintiff is entitled to commissions in an amount equal to: (1) 3% of 100% of the final production budget or cost of production, whichever is greater; (2) 3% of such production budget or cost of production payable out of 50% of 100% of net proceeds; and (3) 10% of the back-end proceeds based on MYE's most favorable definition, for each season of Ghost Adventures, commencing with season two and extending throughout the life of the program;

3. That Plaintiff be provided with a written accounting with respect to the final production budget, the cost of production and the back-end proceeds for all seasons and episodes of Ghost Adventures so that is can determine the total amount of the package commissions payments due and owing from Defendants to Plaintiff;

4. For pre-judgment interest;

5. For the costs of action incurred herein; and

6. For such other and further relief as the Court may deem just and proper.

## REQUEST FOR JURY TRIAL

Plaintiff William Morris Endeavor Entertainment, LLC requests a trial by jury.

DATED: July 24, 2013.

PERKINS COIE LLP

By: /s/ Michael B. Garfinkel /OMG
Michael B. Garfinkel

Attorneys for Plaintiff
WILLIAM MORRIS ENDEAVOR
ENTERTAINMENT, LLC

# EXHIBIT "A"

**WILLIAM MORRIS AGENCY, LLC**
TALENT AND LITERARY AGENCY

SUSAN E. BROOKS
SENIOR VICE PRESIDENT-
WORLDWIDE HEAD OF TELEVISION BUSINESS AFFAIRS

April 29, 2008

Jonathan Sichel
Travel Channel
7700 Wisconsin Avenue
Bethesda, MD 20814

RE: "Ghost Adventures" – MY ENTERTAINMENT

Dear Jonathan,

Per our conversation on April 29, 2008, this letter shall confirm the agreement between Travel Channel and William Morris Agency, LLC ("WMA") that the above-referenced project, including all derivative works, shall be a full WMA represented package. We have agreed that the terms and conditions of such package shall be based on a formula of 3% of 100% of the final production budget or cost of production, whichever is greater, 3% of such production budget or cost of production payable out of 50% of 100% of net proceeds, and 10% of the back-end proceeds based on our clients' most favorable definition. All other terms and conditions shall be negotiated in good faith.

Sincerely,

WILLIAM MORRIS AGENCY, LLC.

Susan Brooks

SEB/ll:

cc: Jim Wiatt, Irv Weintraub, Mark Itkin, John Ferriter, Aaron Kaplan, Jason Hodes, Dave Leffin, Lawrence Thompson, Legal Files

NEW YORK BEVERLY HILLS LONDON NASHVILLE MIAMI BEACH SHANGHAI
ONE WILLIAM MORRIS PLACE • BEVERLY HILLS • CALIFORNIA 90213
PHONE 310 859 4164 • FAX 310 859 4318

# EXHIBIT "B"

**WILLIAM MORRIS AGENCY, LLC**
TALENT AND LITERARY AGENCY

SUSAN E. BROOKS
SENIOR VICE PRESIDENT
WORLDWIDE HEAD OF TELEVISION BUSINESS AFFAIRS

June 5, 2008

Rex W. Rocka
Vice President, Business Affairs & Partnerships
Travel Channel Media
5425 Wisconsin Ave, Suite 500
Chevy Chase, MD 20815

RE: "Ghost Adventures" – MY ENTERTAINMENT

Dear Rex,

I am writing in response to your email to me of May 15, 2008 regarding the above-referenced project. Please be advised that the letter I sent to Jon Sichel on April 29, 2008 is William Morris Agency, LLC's ("WMA") standard package confirmation letter outlining WMA's standard package commission structure for all projects of this nature, irrespective of the studio or network. While I appreciate your negotiation and agreement with Jason Hodes, he does not discuss agency package commissions so any reliance upon any representations made by Mr. Hodes in connection with WMA's package on this or any other project which in any way conflicts with the aforementioned letter is misplaced. All WMA packages are handled through the television business affairs department, of which I am and have been the head for several years. I can therefore assure you that my April 29 letter to Mr. Sichel is an accurate reflection of the package commission structure to which we agreed. Moreover, Chris Newman and I met with Mr. Sichel earlier this year and discussed with him WMA's standard package commission structure and both Chris Newman and myself walked away from that meeting believing that Mr. Sichel, on behalf of Travel Channel, both understood and accepted WMA's package structure generally, and specifically, that the above-referenced project would be a full WMA package based thereon. Accordingly, this package is reconfirmed pursuant to the terms and conditions of said letter.

Sincerely,

WILLIAM MORRIS AGENCY, LLC.

Susan Brooks

SEB/llt

cc: Jim Wiatt, Irv Weintraub, Mark Itkin, John Ferriter, Aaron Kaplan, Jason Hodes, Dave Leffin, Lawrence Thomspson, Legal Files

NEW YORK BEVERLY HILLS LONDON NASHVILLE MIAMI BEACH SHANGHAI
ONE WILLIAM MORRIS PLACE · BEVERLY HILLS · CALIFORNIA 90212
PHONE 310 859 4154 · FAX 310 859 4318

Exhibit "B"
Page -14-