1   Michael B. Garfinkel, State Bar No. 156010
    MGarfinkel@perkinscoie.com
2   Oliver M. Gold, State Bar No. 279033
    OGold@perkinscoie.com
3   **PERKINS COIE LLP**
    1888 Century Park E., Suite 1700
4   Los Angeles, CA  90067-1721
    Telephone:  310.788.9900
5   Facsimile:  310.788.3399

6   Attorneys for Plaintiff WILLIAM MORRIS
    ENDEAVOR ENTERTAINMENT, LLC

7

8               **UNITED STATES DISTRICT COURT**

9          **FOR THE CENTRAL DISTRICT OF CALIFORNIA**

10

11  WILLIAM MORRIS ENDEAVOR             Case No.:  CV13-4229 JAK (AJWx)
    ENTERTAINMENT, LLC, a
12  Delaware limited liability company,   [Assigned to the Hon. John A. Kronstadt]

13              Plaintiff,              **PLAINTIFF'S OPPOSITION TO**
                                        **DEFENDANTS' MOTION TO**
14      v.                              **DISMISS SECOND AMENDED**
                                        **COMPLAINT**
15  SCRIPPS NETWORKS
    INTERACTIVE, INC., an Ohio
16  corporation; TRAVEL CHANNEL,
    L.L.C., a Delaware limited liability   Date:         September 16, 2013
17  company; and DOES 2–50,              Time:         8:30 a.m.
    inclusive,                          Courtroom:    750
18
                Defendants.
19

20

21

22

23

24

25

26

27

28

                                        PLAINTIFF'S OPPOSITION TO
                                        DEFENDANTS' MOTION TO DISMISS

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ............................................................................................ 1

II.     LEGAL STANDARD ..................................................................................... 3

III.    DISCUSSION .................................................................................................. 4

        A.    Scripps Is A Proper Party To This Action ............................................. 4

        B.    WME's Claims Are Not Time-Barred ................................................... 8

              1.    Defendants' House-of-Cards Relation Back Argument Is
                    Inapplicable ................................................................................. 8

              2.    The Continuous Accrual Of Breaches Undermines Defendants'
                    Claim That The Statute Of Limitations Has Lapsed ................ 10

        C.    Defendants Arguments That There Was No Agreement Are Disproved By
              The Fact That They Paid Commissions Under The Contract .............. 12

        D.    Defendants Fail to Provide A Basis On Which To Dismiss WME's Claims
              For An Accounting And Declaratory Relief ........................................ 14

        E.    Should The Court Grant Any Part Of The Motion, Plaintiff Should Be
              Granted Leave To Amend .................................................................... 15

IV.     CONCLUSION ............................................................................................. 16

# TABLE OF AUTHORITIES

Page

**CASES**

*Alexander Associates, Inc. v. FCMP, Inc.,*
  No. 10-12355, 2012 WL 1033464 (E.D. Mich. Mar. 27, 2012) ............................. 7

*Armstrong Petroleum Corp. v. Tri-Valley Oil & Gas Co.,*
  116 Cal. App. 4th 1375 (2004) .................................................................. 10

*Aryeh v. Canon Bus. Solutions, Inc.,*
  55 Cal. 4th 1185 (2013) ..................................................................... 10, 11

*Ashcroft v. Iqbal,*
  556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) ........................................ 3, 7

*Balistreri v. Pacifica Police Dept.,*
  901 F.2d 696 (9th Cir. 1988) ....................................................................... 3

*Beatrice Co. v. State Bd. of Equalization,*
  6 Cal. 4th 767 (1993) ............................................................................. 6, 7

*Bell Atl. Corp. v. Twombly,*
  550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) ........................................ 3, 7

*Cahill v. Liberty Mut. Ins. Co.,*
  80 F.3d 336 (9th Cir. 1996) ......................................................................... 3

*Chang v. Chen,*
  80 F.3d 1293 (9th Cir. 1996) ...................................................................... 16

*Collins v. Palczewski,*
  841 F. Supp. 333 (D. Nev. 1993) .................................................................... 7

*Conerly v. Westinghouse Elec. Corp.,*
  623 F.2d 117 (9th Cir. 1980) ........................................................................ 5

*Conway v. Bughouse, Inc.,*
  105 Cal. App. 3d 194 (1980) .................................................................... 10, 11

*Davies Mach. Co. v. Pine Mountain Club, Inc.,*
  39 Cal. App. 3d 18 (1974) .......................................................................... 13

*Elite Show Servs., Inc. v. Staffpro, Inc.,*
  119 Cal. App. 4th 263 (2004) .................................................................. 12, 13

### TABLE OF AUTHORITIES
#### (*Continued*)

**CASES**          **Page**

*Freeman & Mills, Inc. v. Belcher Oil Co.*,
   11 Cal. 4th 85 (1995)..................................................................14

*Hazel v. Hewlett*,
   201 Cal. App. 3d 1458 (1988)........................................................9

*Henkel Corp. v. Hartford Accident & Indem. Co.*,
   29 Cal. 4th 934 (2003)..................................................................7

*Hong Kong Supermarket v. Kizer*,
   830 F.2d 1078 (9th Cir.1987).........................................................7

*Krupski v. Costa Crociere S. p. A.*,
   130 S. Ct. 2485, 177 L. Ed. 2d 48 (2010) .................................8, 9

*Lopez v. Smith*,
   203 F.3d 1122 (9th Cir. 2000)......................................................15

*Marasco v. Wadsworth*,
   21 Cal. 3d 82 (1978)................................................................9, 10

*Mier v. Owens*,
   57 F.3d 747 (9th Cir. 1995).............................................................3

*Morongo Band of Mission Indians v. Rose*,
   893 F.2d 1074 (9th Cir. 1990).......................................................16

*Ortiz v. S. Bend Lathe*,
   46 Cal. App. 3d 842 (1975)............................................................6

*Phillips v. Cooper Laboratories*,
   215 Cal. App. 3d 1648 (1989)........................................................7

*Provost v. Regents of Univ. of Cal.*,
   201 Cal. App. 4th 1289 (2011), *review denied* (Feb. 29, 2012).........13

*Ray v. Alad Corp.*,
   19 Cal. 3d 22 (1977)..................................................................6, 7

PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS

# TABLE OF AUTHORITIES
### (*Continued*)

**CASES**                                                                                                      **Page**

*Regents of Univ. of Cal. v. Superior Court,*
    20 Cal.4th 509 (1999) ........................................................................................... 5

*Seaman's Direct Buying Serv., Inc. v. Standard Oil Co.,*
    36 Cal. 3d 752 (1984) ........................................................................................ 14

*Streamcast Networks, Inc. v. Skype Technologies, S.A.,*
    No CV 06-391 FMC (EX), 2006 WL 5437322 (C.D. Cal. Sept. 14, 2006) ........ 5

*TwoRivers v. Lewis,*
    174 F.3d 987 (9th Cir.1999) ................................................................................ 3


**STATUTES**

Cal. Civ. Code § 1565 ............................................................................................ 13

Cal. Civ. Proc. Code § 474 ...................................................................................... 9


**OTHER AUTHORITIES**

Rule 12(b)(6) ...................................................................................................... 1, 3

Rule 15 ....................................................................................................................... 8

Rule 15(c)(1)(C)(ii) .................................................................................................. 8

Rule 56 ....................................................................................................................... 7

## MEMORANDUM OF POINTS AND AUTHORITIES

Plaintiff William Morris Endeavor Entertainment, LLC ("WME" or "Plaintiff") respectfully submits this Opposition to the Motion to Dismiss Plaintiff's Second Amended Complaint Pursuant to Federal Rule of Civil Procedure 12(b)(6) filed by defendants Scripps Networks Interactive, Inc. ("Scripps") and Travel Channel, LLC  ("Travel Channel," collectively "Defendants").

## I.    INTRODUCTION

Defendants' motion to dismiss only serves to establish that Plaintiff's claims are timely and sufficient to survive the pleading stage.

Defendants do not dispute, because they cannot dispute, that Travel Channel confirmed the existence of the Package Agreement at issue by performing under it, specifically, by paying the WME package fee on the first season of the television series *Ghost Adventures* ("Ghost Adventures").  Indeed, the emails submitted by Defendants in support of their motion evidence Travel Channel's pre-performance written acknowledgment that it was "very pleased to have reached full agreement" with Plaintiff regarding the Package Agreement.  As alleged in the Second Amended Complaint (the "SAC"), Travel Channel was subsequently acquired by Scripps and instructed Plaintiff to direct all future communications regarding Ghost Adventures to Scripps.  Importantly, Scripps never denied that it was the proper party to the Package Agreement or the existence of the Package Agreement reached by its predecessor.  Rather, Defendants hid the ball and were purposefully slow to respond in the hopes that they could run the clock on Plaintiff's claims.  After its patience was exhausted, Plaintiff filed a state court action against the party with whom it was advised, by Defendants, controlled the Package Agreement—Scripps.

Defendants' gamesmanship continued after the lawsuit was filed.  After removing, Defendants are now seeking to avoid liability based on the argument that Plaintiff initially sued the wrong party.  Despite their pre-litigation instructions that

1    Scripps was the responsible party, Defendants now contend that Plaintiff erred in

2    suing Scripps, and instead maintain that if any party is responsible, it is Travel

3    Channel.  Defendants further contend that Plaintiff's Second Amended Complaint

4    adding Travel Channel as a Doe Defendant in response to Defendants' changing

5    position is too little, too late.

6         Considering that Defendants informed Plaintiff that Scripps was the proper

7    party with which to deal, their argument that Scripps is not a proper party to this

8    lawsuit should be disregarded.  Plaintiff has pled sufficient facts to support its legal

9    theories against Scripps and Travel Channel and Defendants fail to cite to any legal

10   authority that supports their contrary position in the context of a motion to dismiss.

11   Their attempt to transform this motion into one for summary judgment before any

12   discovery has been taken is not only unsuccessful but inappropriate.  At this stage,

13   it is unclear whether both Defendants are proper parties or whether just one of them

14   is responsible for the package fees due Plaintiff.  The answer will be determined in

15   discovery, or by stipulation, and Plaintiff will govern its actions accordingly.

16        Defendants' insistence that all claims against them are time-barred is also

17   incorrect.  Their position that the timeliness of the SAC must be evaluated by

18   reference to when Plaintiff added Travel Channel as a defendant is built upon the

19   erroneous presumptions that: (1) Scripps should not be a defendant—despite telling

20   Plaintiff that Scripps was the proper party with which to deal; and (2) that Travel

21   Channel was not aware of the potential claims against it, despite having dealt with

22   Plaintiff from 2008 to the present and having denied the existence of an agreement

23   (after first having complied with it) in May of 2009.

24        Furthermore, even if Defendants' presumptions were both correct (which

25   they are not), Plaintiff's claims would survive because under the doctrine of

26   continuous accrual, the Package Agreement is severable and the statute of

27   limitations runs separately as to each obligation breached.  Defendants do not

28   dispute, because they cannot dispute, that the package fee obligations arise with

PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS

1   each season that Ghost Adventures is renewed, produced and broadcast.  In January

2   2013, Ghost Adventures was renewed for its seventh season, which is currently

3   being broadcast on Travel Channel.  In other words, the best Defendants can do is

4   argue that the statute has run on package fees relating to early seasons of Ghost

5   Adventures.  They did not, but in any event, Plaintiff's claims survive this motion.

## II.   <u>LEGAL STANDARD</u>

7       A Rule 12(b)(6) motion tests the legal sufficiency of the claims asserted in

8   the complaint.  A Rule 12(b)(6) dismissal is proper only where there is either a

9   "lack of a cognizable legal theory," or "the absence of sufficient facts alleged under

10  a cognizable legal theory."  *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699

11  (9th Cir. 1988).  The court must accept all factual allegations pleaded in the

12  complaint as true, and construe them and draw all reasonable inferences from them

13  in favor of the nonmoving party.  *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-

14  38 (9th Cir. 1996); *Mier v. Owens*, 57 F.3d 747, 750 (9th Cir. 1995).

15      A complaint must "contain sufficient factual matter, accepted as true, to

16  'state a claim to relief that is plausible on its face.' . . . A claim has facial

17  plausibility when the plaintiff pleads factual content that allows the court to draw

18  the reasonable inference that the defendant is liable for the misconduct alleged."

19  *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009); *see*

20  *also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545, 127 S.Ct. 1955, 167 L.Ed.2d

21  929 (2007) (citations omitted).  "Dismissal on statute of limitations grounds can be

22  granted pursuant to Fed. R, Civ. P. 12(b)(6) 'only if the assertions of the complaint,

23  read with the required liberality, would not permit the plaintiff to prove that the

24  statute was tolled.'"  *TwoRivers v. Lewis,* 174 F.3d 987, 991 (9th Cir.1999).

25  / / /

26  / / /

27  / / /

28  / / /

PLAINTIFF'S OPPOSITION TO
                                                   DEFENDANTS' MOTION TO DISMISS

# III.    DISCUSSION

## A.    Scripps Is A Proper Party To This Action.

Defendants' argument that Scripps is not a proper party to this action and should be dismissed is disingenuous, premature, and should be disregarded at this stage in the action.  Defendants fail to cite to *any* legal authority whatsoever that supports their position in the context of a motion to dismiss.  Defendants' primer on successor liability and merger is a not only a red-herring, but is misplaced in the context of a motion to dismiss, at which time the court must accept all factual allegations pled in the complaint as true and draw all reasonable inferences from them in favor of the nonmoving party.  *See e.g., Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d at 337–38.

Notwithstanding Defendants' insistence that Scripps has no interest in the contractual dispute at issue, Plaintiff has set forth sufficient factual allegations to support an inference that it does.  (*See* SAC ¶¶ 23–27.)  The SAC is replete with factual descriptions of communications with representatives of both Travel Channel and Scripps, who misled Plaintiff on this point in apparent hopes that they would be able to run out the statutory clock on these claims.  Plaintiff has thus alleged cognizable legal theories and supported them with sufficient facts to survive this motion.  Considering Defendants' tactics as alleged in the SAC, Plaintiff should, at minimum, be entitled to conduct discovery as to who the proper party to this action is.

To be clear, because Travel Channel and Scripps apparently hid the ball from Plaintiff with respect to which was the proper party with which to negotiate, Plaintiff still does not know at this time whether Travel Channel or Scripps hold the rights and duties to the Package Agreement.  These entities could have assigned the contract between each other or to another party entirely—there is no way of

1 | determining that at this stage of the litigation before Plaintiff has conducted

2 | reasonable discovery, especially considering Defendants' conduct up to this point.

3 |      If it is true that Travel Channel is the proper party to this action, especially in

4 | light of its representations to Plaintiff that it should direct its communications

5 | regarding the Package Agreement to Scripps, then the statute of limitations should

6 | be tolled.  "[U]nder the judicially-created doctrine of fraudulent concealment, a

7 | 'defendant's fraud in concealing a cause of action against him tolls the applicable

8 | statute of limitations.'"  *Streamcast Networks, Inc. v. Skype Technologies, S.A.*,

9 | No CV 06-391 FMC (EX), 2006 WL 5437322 (C.D. Cal. Sept. 14, 2006) (citing

10 | *Regents of Univ. of Cal. v. Superior Court,* 20 Cal.4th 509, 533 (1999)).  The SAC

11 | contains facts describing with particularity the circumstances surrounding

12 | Defendants' gamesmanship and set forth facts showing Plaintiff's due diligence in

13 | trying to uncover which party held the rights and duties to the Package Agreement.

14 | *See Conerly v. Westinghouse Elec. Corp.*, 623 F.2d 117, 120 (9th Cir. 1980).

15 |      Defendants' admit that "Scripps . . . acquired a controlling interest in Travel

16 | Channel in late 2009."  (Mot. at 7.)  In light of this and the factual allegations of the

17 | SAC that "[i]n May 2010, Plaintiff was advised that it should direct its

18 | communications regarding its package commissions on Ghost Adventures to Pat

19 | Guy at Scripps," a reasonable inference that Scripps does, in fact, have an interest

20 | in the contract at issue with Plaintiff not only exists, but is well-supported by the

21 | facts in the SAC.  (SAC ¶ 23.)  Scripps was then consistently slow to respond to

22 | Plaintiff and never disputed that it was the proper party with which to deal.  (SAC

23 | ¶¶ 23–26.)  Defendants' attempt to divert this Court's focus from whether Scripps

24 | could have an interest in the contract with assertions that, following the acquisition,

25 | "Travel Channel continued to exist as a separate, functioning company, with

26 | separate ownership from Scripps," is of no consequence.  (Mot. at 7.)

27 |      Defendants cite to a series of cases to purportedly support their position that

28 | Plaintiff must satisfy one of several rigorous standards to proceed past the pleading

PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS

stage of a lawsuit—but in each of these cases the procedural posture was wholly different, thus rendering them inapplicable to the instant dispute.  For example, *Ray v. Alad Corporation*, addressed whether a corporation purchasing the principal assets of another corporation assumes the other's liabilities; but that case examined that question in the context of a motion for summary judgment—not a motion to dismiss.  *Ray v. Alad Corp.*, 19 Cal. 3d 22, 28 (1977).  Notwithstanding Defendants' insistence, Plaintiff does not have to meet the "principal assets test" at this juncture.  Likewise, Defendants' reading of *Beatrice Co. v. State Bd. of Equalization*, 6 Cal. 4th 767 (1993)—another summary judgment case—is misplaced in this context.  (*See* Mot. at 8.)

Similarly, Defendants' claim that "[t]he SAC simply does not allege, nor could it truthfully assert, that Scripps and Travel Channel agreed that Scripps would assume all liabilities of Travel Channel," may be true, but is irrelevant.  (Mot. at 8.)  Plaintiff need not allege that Defendants agreed that Scripps would assume *all* liabilities of Travel Channel to prevail on its claims, let alone at this stage of the case.  What the SAC does allege, however, are facts showing that Plaintiff was led to negotiate with Scripps and that it was assured by Scripps that it was dealing with the correct party.  Notably the SAC provides:

> On or about December 13, 2010, Mr. Leffin and Mr. Guy had a telephone conversation in which Mr. Leffin explained Plaintiff's entitlement to package commissions on Ghost Adventures.  *Mr. Guy acknowledged that Scripps was the proper party to discuss the package commission issue and asked for additional documentation, which Mr. Leffin provided the same day*.  Mr. Guy indicated that he would investigate and get back to Mr. Leffin to discuss the matter further.

(SAC ¶ 24) (emphasis added.)  The issue of whether *all* corporate liabilities were assumed is a red-herring, as is Defendants' thorough, but inapt, discussion of merger (which also only analyzes cases on appeal from summary judgment).  (*See* Mot. at 8–10) (discussing *Ortiz v. S. Bend Lathe*, 46 Cal. App. 3d 842 (1975)

*disapproved of by Ray v. Alad Corp.*, 19 Cal. 3d 22 (1977); *Phillips v. Cooper Laboratories*, 215 Cal. App. 3d 1648 (1989); *Beatrice Co. v. State Bd. of Equalization*, 6 Cal. 4th 767 (1993); *Henkel Corp. v. Hartford Accident & Indem. Co.*, 29 Cal. 4th 934 (2003)).

*Not one* of the cases that Defendants cite to in their tirade against Plaintiff supports the position that Plaintiff must do anything more than state legally cognizable claims and support those claims with factual allegations from which this Court may draw reasonable inferences in favor of Plaintiff.  Under the applicable test, Plaintiff has made sufficient factual allegations in its SAC to provide Defendants with "fair notice" of what the claims are, what damages resulted, and the grounds upon which they rest.  *See Iqbal*, 556 U.S. at 698–99 (citing *Twombly*, 550 U.S. at 555).  It has thus satisfied what is required of it to withstand this motion.

Rather than address the allegations in the SAC head-on, Defendants attempt to utilize their 12(b)(6) motion to append additional facts, allegations, and exhibits.  However, "it is inappropriate for [a] party to introduce extraneous materials in an attempt to convert the dismissal motion into one for summary judgment under Rule 56."  *See Collins v. Palczewski*, 841 F. Supp. 333, 334 (D. Nev. 1993) (citing *Hong Kong Supermarket v. Kizer*, 830 F.2d 1078, 1080 n. 1 (9th Cir.1987); *see also Alexander Associates, Inc. v. FCMP, Inc.*, No. 10-12355, 2012 WL 1033464 (E.D. Mich. Mar. 27, 2012).  Because Plaintiff has alleged sufficient facts and theories to survive a motion to dismiss and has not been afforded the opportunity to conduct discovery to get to the bottom of which or both of the Defendants should be included in the instant action, Defendants' summary judgment arguments fail.

/ / /

/ / /

/ / /

/ / /

PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS

**B.     WME's Claims Are Not Time-Barred.**

     **1.     Defendants' House-of-Cards Relation Back Argument Is Inapplicable.**

Defendants' attempt to bootstrap their argument that Plaintiff's claims are not timely to their flawed position that Scripps should be dismissed must be seen for what they are.  They slyly reason that "Scripps not a proper party" so "the claims must be evaluated against the only remaining defendant, Travel Channel."  (Mot. at 10.)  However, this leap of logic: (1) assumes as a foregone conclusion the validity of Defendants' position that Scripps is not a party to the action; and (2) ignores the fact that both Travel Channel and Scripps have been on notice of the dispute at issue long before the filing of the SAC, as is clearly alleged in the SAC.  (*See e.g.,* SAC ¶ 22).

As shown above, Defendants have not made a requisite showing that, at this time, Scripps should be dismissed from this action.  (*See* Section A, *supra*.)  Additionally, Defendants insistence that Federal Rule 15 precludes the addition of Travel Channel as a defendant is duplicitous, especially in light of the fact that it led Plaintiff to believe that Scripps was the proper party with which to deal.  (*See* SAC ¶ 23.)  Citing *Krupski v. Costa Crociere S. p. A.*, Defendants argue that "[w]hen the original complaint and the plaintiff's conduct compel the conclusion that the failure to name the prospective defendant in the original complaint was the result of a *fully informed decision* as opposed to a mistake concerning the proper defendant's identity, the requirements of Rule 15(c)(1)(C)(ii) are not met."  (Mot. at 14) (citing *Krupski v. Costa Crociere S. p. A.*, 130 S. Ct. 2485, 2496, 177 L. Ed. 2d 48 (2010) (emphasis added)).  Yet, here, Plaintiff was not fully informed when it sued Scripps—rather it was led into a shell game with Defendants in which it is still involved.

1    The SAC makes clear that Plaintiff was "advised that it should direct its

2  communications regarding its package commissions on Ghost Adventures to Pat

3  Guy at Scripps."  (SAC ¶ 23.)  Following this, "Plaintiff filed its state court action

4  against Scripps based upon the belief that Scripps was responsible for the package

5  commissions at issue as a result of its acquisition of  Travel Channel and Travel

6  Channel's referral of the matter to Mr. Guy at Scripps . . . . At no time during

7  Plaintiff's discussions with Mr. Guy did Mr. Guy take the position that Scripps was

8  not the proper party."  (SAC ¶ 27.)  Plaintiff filed the instant lawsuit against Scripps

9  on May 13, 2013,which Defendants now concede was timely.  (Mot. at 11 n.2.)

10  After dealing with Plaintiff on this issue, Scripps asserts that Plaintiff cannot sue

11  any party—either it or Travel Channel—because Defendants actively misdirected

12  Plaintiff in its attempt to resolve the underlying dispute.  This is not the situation

13  contemplated by the Court in *Krupski*.

14    Defendants' relation-back argument is also undermined by California Code

15  of Civil Procedure section 474, which allows the use of Doe amendments.

16  Defendants concede that this statute provides an exception to the relation-back

17  doctrine and note that:

18    A plaintiff must actually be ignorant of the facts giving him a cause of
      action against a defendant.  *Ignorance of the facts is the critical issue* .

19    . . .  The pivotal question in this regard is "did plaintiff know facts?"
      not "did plaintiff know or believe that [he] had a cause of action based

20    on those facts?"

21

22  (Mot. at 17) (citing *Hazel v. Hewlett*, 201 Cal. App. 3d 1458, 1464-65 (1988).  "The

23  plaintiff is deemed 'ignorant of the name' if he knew the identity of the person, but

24  was ignorant of the facts giving him a cause of action against the person."  (Mot. at

25  17) (citing *Marasco v. Wadsworth*, 21 Cal. 3d 82 (1978)).  Here, as the SAC and

26  this opposition make entirely clear, Plaintiff did not know—and still does not know,

27  due to Defendants' shell game—which party holds the rights and obligations to the

28  Package Agreement.  While Plaintiff certainly knew the name of Travel Channel

PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS

1   when it filed its complaint in this action, it was led to believe that Scripps was the

2   party responsible for the obligations of that agreement.  (SAC ¶ 7.)  It was only

3   after the filing of its Complaint that Plaintiff became aware of "facts giving [it] a

4   cause of action against the [party]."  *See Marasco v. Wadsworth*, 21 Cal. 3d 82

5   (1978).

6           **2.     The Continuous Accrual Of Breaches Undermines**

7                   **Defendants' Claim That The Statute Of Limitations Has**

8                   **Lapsed.**

9           Defendants' argument that the statute of limitations has lapsed is further

10  undermined by the fact that there were continuing breaches of the Package

11  Agreement each year, from the second season through the present.  (*See* SAC ¶ 31.)

12  Thus, any argument that the statute has run as to any of these claims lacks merit and

13  Plaintiff's claims must endure.

14          Regardless of the term of the statute of limitations, Plaintiff can recover

15  under the doctrine of continuous accrual, which holds that when an agreement can

16  be severed into multiple parts or installments, the statute of limitations runs

17  separately as to each obligation breached.  *Armstrong Petroleum Corp. v. Tri-*

18  *Valley Oil & Gas Co.*, 116 Cal. App. 4th 1375, 1388 (2004).  Since the statute of

19  limitations begins to run against each payment at the time it is payable, Plaintiff is

20  entitled to, at the very least, all the payments owed within the statutory period.  *See*

21  *Conway v. Bughouse, Inc.*, 105 Cal. App. 3d 194, 200 (1980) (holding that statute

22  of limitations ran from date each missed pension payment was due); *Armstrong*,

23  116 Cal. App. at 1388 (holding that each incorrect payment constituted a separate

24  cause of action from which statute of limitations began to accrue); *Aryeh v. Canon*

25  *Bus. Solutions, Inc.*, 55 Cal. 4th 1185, 1200 (2013) (holding that repeated breaches

26  of a continuing duty each give rise to its own cause of action).

27

28

-10-

The agreement between Plaintiff and Defendants is exactly the type of installment agreement contemplated by the continuous accrual doctrine. A television series is inherently divisible into discrete seasons, making payment for each season a discrete installment. *See Conway*, 105 Cal. App. 3d at 199–200; *Aryeh*, 55 Cal. 4th at 1199 (continuous accrual applies whenever there is a continuing or recurring obligation). Consistent with this, Scripps paid the upfront portion of Plaintiff's commission in the per-season percentage contemplated in the agreement following the first season. (*See* SAC ¶ 18.)

The doctrine of continuous accrual is particularly applicable in the context of an agreement for commissions stemming from a television series, where payments are subject to conditions and their amount cannot be quantified in advance. *See id.* at 199–200 (installment contract existed where total amount of pension owed was unascertainable and each payment was separate and contingent on continued life and non-competition of receiver). The act of failing to include Plaintiff's commission in each season's budget and thus failing to pay Plaintiff was a breach that repeated during each of the second through the current seasons.

Finally, the conduct of Defendants and Plaintiff indicate that both parties considered the agreement divisible. (*See* SAC ¶ 18.) The partial performance of the agreement is proof that Defendants knew Plaintiff was entitled to a commission payment following each season and intended for the payments to be divisible, even if it failed to provide that payment for the following seasons. Plaintiff also made repeated attempts after the second season ended and payment was not forthcoming to collect its commission and continued to demand adjusted payment at the end of subsequent seasons. In light of this, any assertion that the statute of limitations has lapsed disregards these continuing breaches and lacks merit.

/ / /

/ / /

/ / /

PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS

### C.   Defendants Arguments That There Was No Agreement Are Disproved By The Fact That They Paid Commissions Under The Contract.

Travel Channel paid Plaintiff's package commissions in accord with the terms of Plaintiff's standard package commission structure for the first season of Ghost Adventures.  (SAC ¶ 18.)  Thus, Defendants' arguments that no contract was ever formed is belied by their own conduct.  In support of this untenable position, Defendants mischaracterize Exhibits A and B to the SAC, as well as Exhibits 3 and 4 to their Request for Judicial Notice  (Mot. at 19–20.)

Defendants argue that no contract was formed because their emails allegedly refuted terms of the agreement.  (Mot. at 20–21.)  But, the May 15, 2008 email from Rex Recka noted that Travel Channel was "very pleased to have reached full agreement . . . on all major deal points for the commissioning of the 'Ghost Adventures' series."  (RJN, Ex. 4.)  Additionally, after that exchange, "[o]n August 12, 2008, Travel Channel paid the Upfront Package Commissions on the first season of Ghost Adventures."  (SAC ¶ 18.)  Further, the May 5, 2008 email from Jonathan Sichel notes that Travel Channel was "conceptually fine with the idea of packaging fees," but expressed that he was unsure whether the terms expressed in the Confirmation Letter were reflective of the ones agreed to.  (RJN, Ex. 3.)  Neither of these post-hoc communications suggest that "no contract was formed," as Defendants now suggest—especially since they began to perform under it.  (Mot. at 20; SAC ¶ 18.)

A contract is formed when the parties agree to all material or essential terms, even though other terms may be left open for future negotiation and resolution.  In *Elite Show Servs., Inc. v. Staffpro, Inc.*, 119 Cal. App. 4th 263 (2004), the court examined whether a contract that included an attorneys' fees provision, but failed to specify the amount of fees to be paid thereunder, and instead left that open for future determination rendered the contract too uncertain to enforce.  *Id.* at 268–69.

1    Holding that the parties' agreement, notwithstanding the want of certain express

2    terms, still constituted an enforceable contract, the Court wrote, "neither law nor

3    equity requires that every term and condition of an agreement be set forth in the

4    contract.  *Id.* (citations omitted); *see also Provost v. Regents of Univ. of Cal.*, 201

5    Cal. App. 4th 1289, 1302 (2011), *review denied* (Feb. 29, 2012) (holding that non-

6    material terms may be negotiated after a basic agreement has been reached.).  Here,

7    where Defendants admittedly agreed to "all major deal points" and began to

8    perform under the agreement, their position that the contract is unenforceable

9    because terms of the agreement were refuted and possibly subject to future

10   finalization is incorrect as a matter of law.

11        It is true that "[f]or a contract to be formed, there must be mutual assent

12   between the parties to the contract," (Mot. at 20; Cal. Civ. Code § 1565), but the

13   SAC demonstrates that there *was* mutual assent to the terms of the Package

14   Agreement.  (SAC ¶ 18.)  Importantly, Defendants' subsequent conduct

15   demonstrates that a contract with Plaintiff was formed.  The SAC provides that

16   "Travel Channel paid the Upfront Package Commissions on the first season of

17   Ghost Adventures."  (*Id.*)  Under California law, "[t]he conduct of the parties

18   subsequent to the execution of a contract and before any controversy had arisen as

19   to its effect, is persuasive evidence in determining the meaning of the agreement.

20   'This rule of practical construction is predicated on the common sense concept that

21   'actions speak louder than words.'"  *Davies Mach. Co. v. Pine Mountain Club, Inc.*,

22   39 Cal. App. 3d 18, 26 (1974).

23        Defendants also contend that Travel Channel's May 12, 2009 communication

24   to Plaintiff denying the existence of any contract—which was made a year after the

25   contract was formed and nine months after Travel Channel performed under that

26   same contract—somehow bolsters their lack-of-formation argument.  (*See* Mot. at

27   20) (arguing that "[w]here one party rejects an offer, no contract is formed as to any

28   terms.")  However, once a contract is already formed and performed upon, a

PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS

unilateral rejection or denial of its existence does not undermine the formation of that contract—rather, it is a breach. *See Seaman's Direct Buying Serv., Inc. v. Standard Oil Co.*, 36 Cal. 3d 752, 774 (1984) *overruled on other grounds by Freeman & Mills, Inc. v. Belcher Oil Co.*, 11 Cal. 4th 85 (1995).

Likewise, Defendants' argument that the terms of the Package Agreement are too vague and uncertain to be enforceable are undermined by the fact that Defendants' previously partially performed under that contract. (*See* Mot. at 21–22; SAC ¶ 18.) It is disingenuous to now claim that they did not understand what the terms of the contract were after having complied with them during season one of Ghost Adventures. Because the terms of Package Agreement were honored via partial performance, Defendants' arguments that the contract was never formed or understood should be disregarded.

### D. Defendants Fail to Provide A Basis On Which To Dismiss WME's Claims For An Accounting And Declaratory Relief.

Defendants argue that Plaintiff's "claims for an accounting and declaratory relief are subject to the same statutes of limitations and other defenses discussed above with respect to the contract claims." (Mot. at 22.) In their attempt to dispose of Plaintiff's accounting and declaratory relief claims, Defendants do not raise any arguments unique to either of those claims. Thus, for the same reasons Plaintiff's breach of contract claim must survive this motion to dismiss, so too should these claims. (*See* Sections A–C, *supra*.) In its SAC, Plaintiff has adequately set forth viable legal theories against Defendants for all three claims and has supported each with factual allegations from which this Court may reasonably infer that Plaintiff is entitled to the relief it seeks. Accordingly, Defendant's incorporation and reuse of its faulty arguments fall short of providing a basis on which to dismiss Plaintiff's claims for accounting and declaratory relief.

**E.     Should The Court Grant Any Part Of The Motion, Plaintiff
         Should Be Granted Leave To Amend.**

In this context, if the Court concludes that any portion of Defendants' Motion should be granted, it should allow Plaintiff the opportunity to amend its pleadings as it is well-settled that leave to amend should be freely granted.. *See Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000).

Defendants nonetheless try to go for the "knockout punch" by disingenuously suggesting that Plaintiff has repeatedly failed to state claims against Defendants, or either of them.  Indeed, Defendants' motion opens with the statement that "[d]espite two prior attempts . . . [Plaintiff] has failed to plead any valid claim" against Defendants  (Mot. at 1.)

The truth is that this is the first motion attacking Plaintiff's claims, and no court has considered or ruled on the issues presented.  Plaintiff filed its state-court complaint on May 13, 2013, the last day before the four-year statute of limitations expired on its claims based upon a writing.  Before Scripps responded to the complaint, Plaintiff filed its First Amended Complaint on May 24, 2013, for the sole purpose of affixing the exhibits referenced therein.  Thereafter, counsel for the parties met and conferred and Defendants raised some of their defenses.  At that time, Scripps took the position that it was not the proper party to the litigation, despite its prior inconsistent statements, which led Plaintiff to sue Scripps instead of Travel Channel.  Based upon those discussions, and consistent with the spirit of the meet and confer obligation, Plaintiff voluntarily agreed to file its SAC.  Plaintiff did so without acknowledging or conceding any of the defenses raised by Defendants.  Rather, Plaintiff filed the SAC with the goal of avoiding a motion to dismiss altogether.  Defendants are apparently not satisfied with the SAC, prompting the instant Motion.

Thus, this is the first time the parties have briefed these issues and the first time a court will consider and rule on them.  While Plaintiff is confident it will defeat the Motion, should the Court be persuaded by any of Defendants' arguments, it should afford Plaintiff the opportunity to amend its pleading to address those points.  *See Chang v. Chen*, 80 F.3d 1293, 1296 (9th Cir. 1996) (where a motion to dismiss is granted, a district court should provide leave to amend unless it is clear that the complaint could not be saved by any amendment).  The Ninth Circuit requires that this policy favoring amendment be applied with "extreme liberality." *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990).

## IV.    CONCLUSION

Based on the foregoing, Plaintiff respectfully request that the Court deny Defendants' Motion in its entirety.  In the alternative, if the Court is inclined to grant any portion of the Motion, Plaintiff respectfully request that the Court grant leave to amend.

DATED:  August 26, 2013.               **PERKINS COIE LLP**

By: */s/ Michael B. Garfinkel*
       Michael B. Garfinkel

Attorneys for Plaintiff
WILLIAM MORRIS ENDEAVOR
ENTERTAINMENT, LLC

LEGAL27645881

PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS